## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FIORENTINE<br>1111 Orren Street NE, Apt 206<br>Washington, DC 20002<br><br>-and-<br><br>KIM KRAVITZ<br>600 Three Islands Blvd, Unit 1821<br>Hallandale Beach, FL 33009<br><br>On behalf of themselves and all others<br>similarly situated,<br>                    Plaintiffs, | Case No.: 1:19-cv-3424 |
| <br><br>                    <u>v.</u> | |
| SARTON PUERTO RICO, LLC D/B/A<br>IKEA PUERTO RICO, a Puerto Rico limited<br>liability company,<br><br><br>                    Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs, John Fiorentine and Kim Kravitz, on behalf of themselves and all others similarly situated, bring this action against Defendant, Sarton Puerto Rico, LLC d/b/a Ikea Puerto Rico, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

1.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

2.      Defendant is a Swedish-founded multinational group that designs and sells ready-to-assemble furniture, kitchen appliances and home accessories, among other useful goods and

occasionally home services. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

3.      Through this action, Plaintiffs seek injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiffs also seek statutory damages on behalf of themselves and members of the class, and any other available legal or equitable remedies.

## THE PARTIES AND JURISDICTION

4.      John Fiorentine is a natural person who, at all times relevant to this action, was a resident of the District of Columbia.

5.      Kim Kravitz is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

6.      Defendant is a Puerto Rico limited liability company whose principal office is located at Parque Escorial Lote 1, Av. Sur 1500, Carolina, PR 00987. Defendant directs, markets, and provides its business activities throughout the United States.

7.      This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). Plaintiffs and members of the classes have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs, and members of the class of plaintiffs are citizens of a state different from any defendant.

8.      Venue is appropriate in this district according to 28 U.S.C. § 1391(b)(2) and (b)(3).

9.      This Court has personal jurisdiction over Defendant. Defendant conducts substantial business in the District of Columbia and has extensive, systematic and continuous contact within the District of Columbia. Additionally, a substantial part of the actions which gave rise to Mr. Fiorentine's causes of action occurred in this jurisdiction.

## THE TCPA

10.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

11.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

13.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

15.    To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

16.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

17.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

18.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

19.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).

This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

20.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

21.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

22.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

23.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

### NAMED PLAINTIFFS' FACTS

**JOHN FIORENTINE**

24.     Between July 19, 2019 and October 1, 2019, Defendant sent the following telemarketing text messages to Plaintiff Fiorentine's cellular telephone number ending in 6362 (the "6362 Number"):





25.    Defendant's text messages were transmitted to Plaintiff Fiorentine's cellular telephone, and within the time frame relevant to this action.

26.    Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff furniture, appliances and home accessories.

27.    The information contained in the text messages advertise Defendant's various specials and discounts, which Defendant sends to promote its business.

28.     Plaintiff Fiorentine received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

29.     At no point in time did Plaintiff Fiorentine provide Defendant with his express written consent to be contacted using an ATDS.

30.     Plaintiff is the subscriber and sole user of the 6362 Number, and is financially responsible for phone service to the 6362 Number.

31.     Plaintiff has been registered with the national do-not-call registry since April 23, 2008.

32.     Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

33.     Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

34.     Further, Plaintiff had to translate the messages from Spanish to English in order to read them, which caused Plaintiff to waste another few minutes each time he received a message.

35.     Further, Defendant hounded Plaintiff with persistent messages, including early in the morning and late at night, and during the week. Plaintiff was at home when he received many of these messages, which resulted in an audible sound and the disturbance of the domestic peace of Plaintiff's home. For example, Plaintiff was woken up from sleeping as a result of receiving at least one of the messages.

36.     Subsequently, Plaintiff wasted approximately five minutes on the National Do Not Call Registry to determine whether his number was registered and why he was being contacted given that he believed he was on the DNC.

37.     Next, Plaintiff wasted approximately thirty minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages.

38.     In all, Defendant's violations of the TCPA caused Plaintiff to waste at least forty minutes of his time in addressing and attempting to stop Defendant's solicitations.

**KIM KRAVITZ**

39.     On or about July 30, 2019 and August 30, 2019, Defendant sent the following telemarketing text messages to Plaintiff Kravitz's cellular telephone number ending in 3388 (the "3388 Number"):



40.     Defendant's text messages were transmitted to Plaintiff Kravitz's cellular telephone, and within the time frame relevant to this action.

41.     Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff furniture, appliances and home accessories.

42.     The information contained in the text messages advertise Defendant's various specials and discounts, which Defendant sends to promote its business.

43.     At no point in time did Plaintiff Kravitz provide Defendant with her express written consent to be contacted using an ATDS.

44.     Plaintiff Kravitz is the subscriber and sole user of the 3388 Number, and is financially responsible for phone service to the 3388 Number.

45.     Defendant's unsolicited text messages caused Plaintiff Kravitz actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff Kravitz and caused disruption to her daily life.

46.     Defendant's unsolicited text messages caused Plaintiff Kravitz actual harm. Specifically, Plaintiff Kravitz estimates that she has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff Kravitz had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message.

47.     Plaintiff Kravitz was at home when she received one of the messages, which resulted in an audible sound and the disturbance of the domestic peace of Plaintiff Kravitz's home. For example, one of the messages woke her up while she was sleeping.

48.     Plaintiff Kravitz was at work when she received one of the messages, which resulted in an audible sound and she had to stop working to review the message.

49. Additionally, Plaintiff Kravitz estimates that she wasted approximately five minutes researching Defendant and the source of the messages on the Internet, and attempting to determine how Defendant obtained her telephone number.

50. Next, Plaintiff Kravitz wasted at least sixty minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages.

51. In all, Defendant's violations of the TCPA caused Plaintiff Kravitz to waste at least sixty minutes of her time in addressing and attempting to stop Defendant's solicitations.

## FACTS COMMON TO ALL CLAIMS

52. The impersonal and generic nature of Defendant's text messages demonstrate that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

53.     The text messages originated from telephone numbers 833-265-1874, 833-265-1875, 833-265-1876, 833-265-1877 and 833-265-1878, numbers which upon information and belief are owned and operated by Defendant.

54.     The numbers used by Defendant (833-265-1874, 833-265-1875, 833-265-1876, 833-265-1877 and 833-265-1878) are known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

55.     Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

56.     Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the capacity to store telephone numbers using a random or sequential generator, and to dial such numbers from a list without human intervention.

57.     To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

58.     The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendant.

59.     The Platform has the capacity to generate sequential numbers, which capacity was in fact utilized by Defendant.

60.     The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendant.

61.     The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by Defendant.

62.     The Platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by Defendant.

63.     The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

64.     To transmit the messages at issue, the Platform automatically executed the following steps:

  a.  The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

  b.  The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

  c.  Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

  d.  Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

65.    The above execution of these instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

66.    Further, the Platform "throttles" the transmission of the text messages depending on feedback it receives from the mobile carrier networks. In other words, the platform controls how quickly messages are transmitted depending on network congestion. The platform performs this throttling function automatically and does not allow a human to control the function.

67.    The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



## CLASS ALLEGATIONS

### PROPOSED CLASS

68.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

69.    Plaintiffs bring this case on behalf of a Class defined as follows:

> **No Consent Class: All persons who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendant's goods and services, and (4) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it**

**obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

70.     Plaintiff Fiorentine brings this case on behalf of a Class defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

71.     Defendant and its employees or agents are excluded from the Classes. Plaintiffs do not know the number of members in the Classes, but believe the Class members number in the several thousands, if not more.

**NUMEROSITY**

72.     Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers  throughout the United States without their prior express consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

73.     The exact number and identities of the Classes members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

## COMMON QUESTIONS OF LAW AND FACT

74.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

> **(1)** Whether Defendant made non-emergency calls to Plaintiffs' and Class members' cellular telephones using an ATDS;
>
> **(2)** Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> **(3)** Whether Defendant's conduct was knowing and willful;
>
> **(4)** Whether Defendant is liable for damages, and the amount of such damages; and
>
> **(5)** Whether Defendant should be enjoined from such conduct in the future.

75.     The common questions in this case are capable of having common answers. If Plaintiffs' claims that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services are accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

76.     Plaintiffs' claims are typical of the claims of the No Consent Class members, as they are all based on the same factual and legal theories.

77.     Plaintiff Fiorentine's claims are typical of the claims of the Do Not Call Registry Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

78.     Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

79.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

80.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiffs and the No Consent Class)

81.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

82.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

83.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiffs and the other members of the No Consent Class defined above.

84.     These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative No Consent Class when its calls were made.

85.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiffs and the other members of the putative No Consent Class without their prior express written consent.

86.     Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

87.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and the other members of the putative No Consent Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiffs and the No Consent Class are also entitled to an injunction against future calls. *Id*.

**COUNT II**
**Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiffs and the No Consent Class)**

88.     Plaintiffs re-allege and incorporate paragraphs 1-80 as if fully set forth herein.

89.     At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

90.     Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

91.     Because Defendant knew or should have known that Plaintiffs and No Consent Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the putative No Consent Class pursuant to § 227(b)(3) of the TCPA.

92.     As a result of Defendant's violations, Plaintiffs and the No Consent Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**COUNT III**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff Fiorentine and the Do Not Call Registry Class)**

93.     Plaintiff Fiorentine re-alleges and incorporates paragraphs 1-80 as if fully set forth herein.

94.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

95.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

96.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

97.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

98.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Fiorentine and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

99.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Fiorentine and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Fiorentine and the Do Not Call Registry Class suffered actual damages and,

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

100.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

a.    An order certifying this case as a class action on behalf of the Classes as defined above, appointing Plaintiffs as the representatives of the No Consent Class, Plaintiff Fiorentine as the representative of the Do Not Call Registry Class and counsel as Class Counsel;

a.    An award of actual and statutory damages;

b.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

c.    A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

d.    An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes;

e.    An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment; and

f.    Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiffs and Class Members hereby demand a trial by jury.

Dated: November 13, 2019          By:      */s/ Andrea R. Gold*
                                          Andrea R. Gold (502607)
                                          agold@tzlegal.com
                                          **TYCKO & ZAVAREEI LLP**
                                          1828 L Street NW, Suite 1000
                                          Washington, DC 20036
                                          Telephone: 202-973-0900
                                          Facsimile: 202-973-0950

                                          **SHAMIS & GENTILE, P.A.**
                                          Andrew J. Shamis, Esq.
                                          Florida Bar No. 101754
                                          ashamis@shamisgentile.com
                                          Garrett O. Berg, Esq.
                                          Florida Bar No. 1000427
                                          gberg@shamisgentile.com
                                          14 NE 1st Avenue, Suite 1205
                                          Miami, FL 33132
                                          Telephone: 305-479-2299

                                          **EDELSBERG LAW, PA**
                                          Scott Edelsberg, Esq.
                                          Florida Bar No. 0100537
                                          scott@edelsberglaw.com
                                          20900 NE 30th Ave, Suite 417
                                          Aventura, FL 33180
                                          Telephone: 305-975-3320

                                          *Counsel for Plaintiffs and the Classes*