IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN FIORENTINE, et al.**, <br><br>  Plaintiffs, <br><br> V. <br><br><br> **SARTON PUERTO RICO, LLC D/B/A IKEA PUERTO RICO**, <br><br>  Defendant. | CIVIL NO.:  1:19-CV-3424-CKK |

## MOTION FOR TRANSFER OF VENUE

**NOW INTO THIS COURT**, comes Sarton Puerto Rico, LLC d/b/a Ikea Puerto Rico, the defendant herein (the"**Defendant**") and hereby moves this Court for either a dismissal or transfer of venue for lack of jurisdiction to the U.S. District Court for the District of Puerto Rico.  In support thereof, Defendant shows the Court the following:

**I.    THE COMPLAINT**

Class Representative Plaintiffs filed the instant civil action before this Court alleging the Defendant engaged in conduct that runs counter to the Telephone Consumer Protection Act. 47 U.S.C. § 227 et seq., (the "**TCPA**").

The following is a summary of Plaintiffs' factual allegations contained in the Complaint; however, the same is not meant to be an admission, direct, indirect, tacit or otherwise, of the allegations contained therein.

"Defendant is a Swedish-founded multinational group that designs and sells ready-to-assemble furniture, kitchen appliances and home accessories, among other useful goods and

occasionally home services. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process." Docket Entry ("DE"; Complaint)1, ¶ 2.

"Defendant is a Puerto Rico limited liability company whose principal office is located at Parque Escorial Lote 1, Av. Sur 1500, Carolina, PR 00987. Defendant directs, markets, and provides its business activities throughout the United States." Id., ¶ 6.

Plaintiffs allege that "*Defendant conducts substantial business in the District of Columbia and has extensive, systematic and continuous contact within the District of Columbia. Additionally, a substantial part of the actions which gave rise to Mr. Fiorentine's causes of action occurred in this jurisdiction.*" Id., ¶ 9.

In 2012, the FCC revamped its regulations for automated telemarketing calls "requiring 'prior express *written* consent' for such calls to wireless numbers" (emphasis added). And a Defendant can of course demonstrate that it did have prior express consent. Id., ¶¶ 14, 21.

Plaintiffs in the instant case are **John Fiorentine** ("**Fiorentine**") and **Kim Kravitz** ("**Kravitz**" or "**Plaintiffs**" collectively). The former is a resident of the District of Columbia; the latter, a resident of Broward County, Florida. Docket 1, ¶¶ 4-5. The specific factual allegations of each are as follows:

**Plaintiff Fiorentine**:

- Between July 19, 2019 and October 1, 2019 Fiorentine identified in the complaint approximately seven text messages to his mobile phone. Fiorentine at no time provided Defendant with express written consent to receive the text messages and he is registered in a national do-not-call registry since April 23, 2008. Id., ¶¶ 24, 29, 31.

**Plaintiff Kravitz:**

- Between July 30, 2019 and August 30, 2019, Kravitz identified in the complaint approximately two text messages to her mobile phone. Kravitz at no time provided Defendant with express written consent to receive the text messages. Id., ¶¶ 39, 43.

### A. *The Defendant Has No Presence in the District of Columbia*

The Defendant is a single purpose business organization, organized under the laws of the Commonwealth of Puerto Rico, and operating in Puerto Rico only. In 2013, the Defendant began business operations in Puerto Rico consisting of points of sale in three different locations in Puerto Rico. In 2018, the Defendant and IKEA Systems B.V., ("**IKEA**") entered into a franchise agreement. Exhibit 1 to Attachment 1, ¶¶ 4, 7-9, 11. [1]

The *Franchise Agreement* in addressing "Advertising and Promotion" restricts the Defendant to its "Primary Market Area" and restricts it from soliciting sales outside its territory. As per the terms and conditions of the *Franchise Agreement*, the Defendant is allowed to operate in its agreed-to Primary Market Area only, that being: **Puerto Rico**. This territorial limitation of the Puerto Rico market limits the sale and delivery of merchandise to Puerto Rico only. While an order may be placed electronically, the actual delivery of the merchandise is physically limited to Puerto Rico. *See*, www.IKEA.pr. For example, if an internet purchase is going to be made, it will require a Puerto Rico address for delivery. Stated differently, any attempt to register with

---

[1] Attachment A is the Sworn Statement of Dorys Mejia, who is currently employed as the Manager of Product Requirement and Compliance for the Sarton entities in Puerto Rico and the Dominican Republic. In her Sworn Statement, Ms. Meija references the Franchise Agreement attached as Exhibit 1. Contemporaneously with the filing of this Motion, the Defendant has filed a motion to file the Franchise Agreement under seal due to its sensitive and proprietary nature. *Xie v. Sklover & Company, LLC*, 260 F.Supp.3d 30, 34 f.n. 1 (D.D.C 2017) ("[T]he Court must evaluate different constellations of fact depending on the ground for dismissal. Because the Court 'may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts,' *Khatib v. All. Bankshares Corp.,* 846 F.Supp.2d 18, 26 (D.D.C. 2012) (quoting *D'Onofrio v. SFX Sports Grp., Inc*., 534 F.Supp.2d 86, 89 (D.D.C. 2008)), the factual account that follows draws from materials beyond the pleadings."); *See also, Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322-23 (2007). *See also Heller Fin., Inc. v. Midwhey Powder Co., Inc*., 883 F.2d 1286, 1293-94 (7th Cir. 1989) (suggesting moving party should supply "affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of their testimony").

www.IKEA.pr using an address outside of Puerto Rico will not be allowed by the system. Id., ¶¶ 10, 12-14, 22.

From an operational standpoint, the Defendant has approximately 140 employees. Of these, there is one general manager, and approximately eight managers that report to the general manager. Every single managerial position and all of the 140 employees are located in the Commonwealth of Puerto Rico. Id., ¶¶ 17-19.

All of the data, electronic, hardcopies, or otherwise regarding the Defendant business operations with its customer base is located in the Commonwealth of Puerto Rico. Likewise, all internal corporate governance information, electronic, hardcopies, or otherwise regarding the Defendant's business operations is located in the Commonwealth of Puerto Rico. All of the Defendant personnel, business records, properties, assets, operations, merchandise, business operations and/or business decision making processes are all in the Commonwealth of Puerto Rico. Simply put, the Defendant has no personnel, operations or any sort of connection with the District of Columbia or any other Sister State or territory of the United States. In fact, as addressed, *ante*, the Defendant has a contractual restriction from operating outside of the Puerto Rico market. Id., ¶¶ 20-23.

Further, Mr. John Fiorantine and Ms. Kim Kravitz's business records with the Defendant are located the Defendant's business offices (located at Plaza 3, Lote 1 Ramal 887; Bo. Martin Gonzalez, Carolina, PR 00984). Id., ¶ 25. A review of the business records between the Defendant and Plaintiffs is remarkable for the following:

- ➢ **John Fiorantine**: made 12 purchases in IKEA Puerto Rico approximately from January 25, 2014 to September 13, 2018. Every single purchase was locally carried out and the deliveries were in addresses in the Commonwealth of Puerto Rico only.

> **Kim Kravitz:** does not show any purchases made; however, Ms. Kravitz did register electronically through, www.IKEA.pr using a 00646 zip code which corresponds to Dorado, Puerto Rico on July 20, 2016.

Id., ¶¶ 25-27.

## II.     LEGAL FRAMEWORK

### A.     *The General Venue Statute -- 28 U.S.C.A. § 1391*

Section § 1391(b), in its pertinent part, provides that "[a] civil action may be brought in[:] (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C.A. § 1391(b).

It is unquestionable that the Defendant is a Commonwealth of Puerto Rico corporation. DE 1, ¶ 6. As addressed herein above, the Defendant has no presence whatsoever in the District of Columbia. The commercial relationships between the Defendant, Fiorentine and Kravitz originated and occurred in the Commonwealth of Puerto Rico. All aspects of the transactional affairs between Plaintiffs and Defendant occurred in Puerto Rico. As addressed above, the Defendant has absolutely no presence in the District of Columbia. The entirety of the Defendant's business operation (personnel, warehouse, points of sale, distribution of merchandize, all business records, etc.) all occur in Puerto Rico; such operation is limited to the U.S. Commonwealth island. In fact, the *Franchise Agreement* under which it operates strictly limits the Defendant's business endeavors to the Commonwealth of Puerto Rico.

### B.     *The Change of Venue Statute – 28 U.S.C. § 1404*

Congress largely superseded the *Forum Non Conveniens* doctrine in 1948 when it enacted 28 U.S.C. § 1404(a). *See, Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996); *Norwood*

*v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("The harshest result of the application of the old doctrine of *Forum Non Conveniens*, dismissal of the action, was eliminated by the provision in § 1404 for transfer."). As a consequence, the *Forum Non Conveniens* doctrine "has continuing application [in federal courts] only in cases where the alternative forum is abroad, ' and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994). Section 1404(a) gives district courts discretion to transfer cases upon a lesser showing of inconvenience than that required to dismiss on grounds of *Forum Non Conveniens*. *See, Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood*, 349 U.S. at 31 (it is "perfectly clear that the purpose of [§ 1404(a)] of the Revised Judicial Code was to grant broadly the power of transfer for the convenience of parties and witnesses, in the interests of justice, whether dismissal under the doctrine of *Forum Non Conveniens* would have been appropriate or not").

The change of venue statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C.A. § 1404 (a). "[T]he purpose of the [statute] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. To this end it empowers a district court to transfer any civil action to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). In view of the foregoing, "[the] court must determine first whether the case might have been brought in the suggested transferee district and, if so, whether convenience and the interest of justice favor transfer." *World Energy Alternatives, LLC v. Settlemyre Indus., Inc.,* 671 F. Supp. 2d 215, 217 (D. Mass. 2009). As stated

above, all aspects of the Defendant's business activities are strictly limited to the Commonwealth of Puerto Rico, and all business engagements by Plaintiffs with the Defendant occurred in Puerto Rico. Moreover, the Defendant's Franchise Agreement restricts its operation to Puerto Rico.

A district court may transfer an action under § 1404(a) or dismiss it on grounds of *Forum Non Conveniens* even when it lacks personal jurisdiction over all defendants. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (finding that district courts may grant a petition to transfer whether the court in which the case was filed had personal jurisdiction over the defendants or not); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (under § 1404(a), as under § 1406(a), the transferring court need not have personal jurisdiction over the defendants); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S.Ct. 1184, 1192 (2007) ("A district court therefore may dispose of an action by a *Forum Non Conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."). The Defendant submits that it will be a stretch for Plaintiffs to argue to this Court that this action could not have been brought in the District of Puerto Rico. Moreover, the Defendant's contacts with the District of Columbia are: NONE.

Thus, the question before this Court is whether transferring this case would increase the convenience of the parties and witnesses and advance the interests of justice. *See Van Dusen v. Barrack*, *Supra* at 622 (1964) (§ 1404(a) requires "individualized, case-by-case consideration of convenience and fairness").

"The interest of justice is a separate component of a § 1404(a) transfer analysis and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). At the second step, Section 1404 "[places] discretion in the district court to adjudicate motions for

transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (quoting *Van Dusen,* 376 U.S., at 622).

Transfer of venue to the District of Puerto Rico serves the interest of justice. *World Energy Alternatives,* 671 F. Supp., at 217. In making that determination, "the Court may consider a number of factors, including: 1) the plaintiff's choice of forum, 2) the convenience of the witnesses and location of documents, 3) the law to be applied, 4) the connection between the forum and the issues, 5) the state or public interests at stake; and 6) the relative convenience of the parties." *OsComp Sys., Inc. v. Bakken Exp., LLC,* 930 F. Supp. 2d 261, 273 (D. Mass. 2013) (quoting *World Energy Alts.,* 671 F.Supp.2d, at 218).

### 1) The Plaintiffs' Choice of Forum.

The choice of a home forum may be overcome when the private and public interest factors clearly point towards trial in the alternative forum.  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981)).  In deciding *Forum Non Conveniens* claims, a court must decide (1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a balancing of private and public interest factors strongly favors dismissal. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n,* 528 F.3d 934, 950 (D.C. Cir. 2008).  The balancing of private and public interests occurs only if an adequate alternative forum exists. *Id*.

As amply addressed hereinabove, the Defendant does not have one single contact with the District of Columbia.  Mr. Fiorentine and Ms. Kravitz's relationship with the Defendant was initiated by them, in Puerto Rico.  Kravitz registered with IKEA Puerto Rico, using a Dorado, Puerto Rico zip code, but made no purchases.  Fiorentine made a dozen transactions using Puerto Rico addresses for purchases through IKEA Puerto Rico where the merchandise would change

hands in Puerto Rico, not the District of Columbia. As such, in addition to the District of Puerto Rico being the correct forum given that all business transactions were initiated by Plaintiffs themselves in Puerto Rico and logistics are located there, the U.S. District Court for the District of Puerto Rico is an equally viable and alternative forum as a brethren court.

### 2) The Law to Be Applied.

The jurisdictional basis of Plaintiffs' lawsuit is via the TCPA pursuant to federal question jurisdiction. *See*, 47 U.S.C. § 227 et seq. As such, which ever forum retains the jurisdiction will be applying Federal law, a task that the U.S. District Court for the District of Puerto Rico is more than capable of handling.

### 3) The Convenience of the Witnesses and Location of Documents.

The convenience of the witnesses is "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. 1404(a)." *U.S. ex rel. Ondis v. City of Woonsocket, Rhode Island,* 480 F. Supp. 2d 434, 437 (D. Mass. 2007). Although "[w]itness convenience is often dispositive in transfer decisions [it] cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony." *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.,* 702 F.Supp. 1253, 1258 (E.D.Va.1988). This is because, "[i]n analyzing the convenience of the witnesses, the Court must consider not only the number of potential witnesses located in the transferor and transferee districts, but also the nature and quality of their testimony and whether they can be compelled to testify." *Ratner v. Hecht,* 621 F. Supp. 378, 382 (N.D.Ill.1985). Thus, "[w]hen a party seeks to transfer on account of the convenience of witnesses ..., he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will

cover." *Brant Point Corp. v. Poetzsch,* 671 F. Supp. 2, 4 (D. Mass. 1987) (quoting *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908 (1979).

Currently, the Defendant has approximately 140 employees. There is one general manager, and approximately eight managers that report to the general manager. These managers direct the following divisions listed below and handle specified functions. Although *Information Technology* is not at this time a managerial position we included it as a position that would be involved in our defense in this matter. At this early stage of the proceedings, we would be using as witnesses the following managers (with a brief description of the functions of those positions who the Defendant would be calling as witnesses at this point in time; however, we reserve the right to supplement the list of witnesses if deemed necessary) as follows:

- General Manager
- Human Resources
- Logistics (two slots)
- Customer Relations
- Security
- Physical Maintenance
- Information Technology

    a) <u>Information Technology Specialist</u>: Secure IT operations in the store and ensures it is working with high quality and according to the standards set by IKEA internationally as well as the IT policies. Secure that IKEA standards and other IT standards are adhered to according to rules and guidelines in your country. The IT resource for the store in all projects involving some component of IT.

- Sales Managers (two slots: Show Manager & Market Hall Manager)

    a) <u>Furniture sales manager (Showroom)</u>: Ensures the sales budget and gross margin goals set by the store manager for Business Areas is achieved; achieve the customer satisfaction goals; that sales forecasts are adapted to

10

the sales in order to achieve an optimal goods flow; All internal transactions of products belonging to the business area follow internal procedures. Ensuring that systems and methods stated in IKEA Concept Documentation are implemented in the Showroom and Self-serve furniture area operations. Responsible for steering the performance in the Showroom and Self-serve furniture area operations towards maximized sales and optimized long-term profit by: applying sales methods in accordance with the *Selling in the Showroom the IKEA way* manual and the *Range presentation the IKEA way* manual, ensuring the implementation of the sales objectives defined in the furniture range sales budget, setting standards for the store operating procedures in the Showroom and Self-serve furniture area. Work with the marketing and Sales & Range manager in Service Office to plan and organize marketing activities related to the commercial calendar.

    i. Shopkeeper: reports to the Furniture Sales Manager: Ensures that all internal transactions of products belonging to his area follow internal procedures. Ensures that systems and methods stated in IKEA Concept Documentation are implemented. Steering the performance in the business area operations towards maximized sales and optimized long-term profit by: applying sales methods in accordance with the *Selling in the Showroom the IKEA way* manual and the *Range presentation the IKEA way* manual, ensuring the implementation of the sales objectives defined in the furniture range sales budget, setting standards for the store operating procedures in its business area.

b) <u>Market Hall Sales Manager</u>: Ensures that sales are organized and operated according to the following range structure in the Market hall: Open-the-wallet; Cooking & Eating; Textiles (including rugs and flooring); Home organization; Lighting; Oasis; Responsible for all add on sales throughout the whole store. Responsible for all activities (marketing campaigns) and seasonal sales like Christmas, Easter, Ramadan, etc. depending on the culture in your territory. Ensures that all internal transactions of products belonging to the business area follow internal procedures. Ensures that systems and methods stated in IKEA Concept Documentation are implemented in the Market hall area operations. Steering the performance in the Market hall and add on sales areas operations towards maximized sales and optimized long-term profit by: applying sales methods in accordance with the *Selling in the Market hall the IKEA way* manual and the *Range presentation the IKEA way* manual and *Add on sales the IKEA way* manual; ensuring the implementation of the sales objectives defined in the Market hall range sales budget; setting standards for the store operating procedures in the Market hall area (also important for Market hall are clear routines for how to take care of and replenish loose hands / abandoned products by the check outs).

Exhibit 1, ¶ 17.

In addition, the Defendant would be calling Dorys Mejia, Manager of Product Requirement and Compliance, whose Sworn Statement is attached hereto as <u>Attachment A</u>.  In that position Ms. Mejia is responsible for the following:

    a) The monitoring of laws & standards involving safety and compliance at IKEA's range, but also IKEA's general business including, among others, consumers, advertising, sanitary, commercial and sales rules, internal policies. With external local consultants [the organization] define[s] local market requirements in order to cover product, consumer/client rights and our main business requirements.

    b) Controlling product safety & compliance, thereby avoiding misleading consumer information or consumer rights. Given [the organization's] policy that [their] customer is [their] first asset [they] ensure that all warranties are covered, and that consumer rights are not compromised. Ensuring that data protection, safety and security remain as business top priorities.

    c) Acting to inform all concerned entities and inhouse departments and support retail in making prompt business responses. Whenever needed, reply to authorities, provide information and responses to customers.  Provide quick and expeditious responses and solutions to unforeseen situations as they surface.

Exhibit 1, ¶ 6.

### 4) The Connection Between the Forum and the Issues.

In the instant case, as detailed above, there is a substantial connection between Plaintiffs and the District of Puerto Rico.  The connection with the District of Columbia is non-existent.  In fact, all contacts between the Defendant and the Plaintiffs were initiated by Fiorentine and Kravitz in Puerto Rico only.  Accordingly, this factor clearly supports a finding that the District of Columbia is an inconvenient forum.

### 5) State or Public Interests at Stake.

The factors pertaining to the private interests of litigants include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of

obtaining attendance of willing, witnesses; possibility of view of premises (if view would be appropriate to the action); and all other practical problems that make trial of a case easy, expeditious and inexpensive. The public factors bearing on the question included the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home. *Piper Aircraft Co.*, 454 U.S., at 241 n.6 (Internal citations omitted).

This inquiry focuses on whether "the claim underlying the litigation ... directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." *N. Laminate Sales, Inc., v. Davis,* 403 F.3d 14, 25 (1st Cir. 2005). Although *N. Laminate Sales, Inc, Supra,* addressed criteria primarily under diversity of jurisdiction, regarding the State or Public Interest involved, we underscore that Plaintiffs contacts with the Defendant was related to purchases occurring exclusively and limited to Puerto Rico. As addressed, *ante*, Plaintiffs provided to the Defendant contact information with Commonwealth of Puerto Rico addresses. And all deliveries of sale of merchandise were limited to Puerto Rico. Therefore, the applicable public-interest factors weigh in favor of the Puerto Rico venue in this action.

### 6) The Relative Convenience of the Parties.

As addressed above, all witnesses, documents and evidence are located in Puerto Rico. Hence, transfer of venue is appropriate here.

### III. CONCLUSION

Under Section 1404(a), venue is proper in the District of Puerto Rico because the all the contacts giving rise to the business relationship occurred in Puerto Rico; the transactional affairs were in Puerto Rico. All method of proof is in the District of Puerto Rico.

**WHEREFORE,** the Defendant respectfully requests that this Court enter an order, substantially in the form attached hereto, granting the Motion for Transfer of Venue.

February 27, 2020  /s/ Pedro R. Vazquez, III

Pedro R. Vazquez, III (Admitted *pro hac vice*)
PEDRO R. VAZQUEZ, III, PSC
Esmeralda Ave, Suite 2,
PMB 153, Guaynabo, PR 00969-4457
Telephone: (787) 925-4669
E-mail:  Prvazquez3@gmail.com

/s/José F. Quetglas Jordán
José F. Quetglas Jordán (Admitted *pro hac vice*)
**QUETGLAS LAW FIRM, P.S.C.**
1353, Luis Vigoreaux Ave.
PMB 657, Guaynabo, PR 00966
Tel:(787) 406-8915
Email: jfquetglas@gmail.com;
 quetglaslawpsc@gmail.com

*Counsel to Sarton Puerto Rico, LLC*

/s/ Kristen E. Burgers
Kristen E. Burgers (DC Bar No. 500674)
Hirschler Fleischer
8270 Greensboro Drive, Suite 700
Tysons, VA 22102
Telephone (703) 584-8364
Facsimile (703) 584-8901
E-mail: kburgers@hirschlerlaw.com

*Local Counsel to Sarton Puerto Rico, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 27, 2020, I electronically filed the foregoing Motion for Transfer of Venue with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kristen E. Burgers*
Kristen E. Burgers

12094499.2  045030.00001