UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FIORENTINE *et al.*,
    Plaintiffs,

v.

SARTON PUERTO RICO, LLC D/B/A IKEA PUERTO RICO,
    Defendant.

Civil Action No. 19-3424 (CKK)

**MEMORANDUM OPINION**
(August 29, 2020)

    This case concerns a putative class action involving alleged violations of the Telephone Consumer Protection Act ("TCPA"). Now pending before the Court is Defendant's Motion for Transfer of Venue ("Defendant's Motion"), ECF No. 11. Upon consideration of the briefing, the relevant authorities, and the record as a whole,[1] the Court **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's complaint **WITHOUT PREJUDICE**.

**I.    BACKGROUND**

    On November 13, 2019, Plaintiffs John Fiorentine and Kim Kravitz ("Plaintiffs") filed this action against Defendant Sarton Puerto Rico, LLC d/b/a IKEA Puerto Rico ("Defendant") alleging violations of the TCPA. *See* Compl. ¶¶ 1–3. Defendant is a Puerto Rico limited liability company that "designs and sells ready-to-assemble furniture, kitchen appliances and home accessories, among other useful goods and occasionally home services." *Id.* ¶¶ 2, 6. More specifically,

---

[1] The Court's consideration has focused on the following:
- Compl., ECF No. 1;
- Def.'s Mot. for Transfer of Venue ("Def.'s Mot."), ECF No. 11;
- Pls.' Opp'n to Def.'s Mot. for Transfer of Venue ("Pls.' Opp'n"), ECF No. 14;
- Def.'s Reply, ECF No. 15; and
- Pls.' Suppl. Mem. in Supp. of Pls.' Opp'n to Def.'s Mot. for Transfer of Venue ("Pls.' Suppl. Br."), ECF No. 18.

Defendant was established as an extension of a Dominican parent entity, through a franchise agreement with InterIkea Systems BV ("IKEA"), a Netherlands corporation. *See* Def.'s Mot., Ex. A (Mejia Decl.), ¶¶ 7–11. In 2013, Defendant began its business operations, which comprised "points of sale in three different locations in Puerto Rico." Def.'s Mot. at 3; *see also id.*, Ex. A (Mejia Decl.), ¶ 8. Later, in 2018, Defendant entered into an amended franchise agreement with IKEA, which formally restricted Defendant's business operations to the activities within the territory of Puerto Rico. *See id.*, Ex. A (Mejia Decl.), ¶¶ 13–14. Defendant currently employs approximately 140 individuals, all of whom work within the Puerto Rico territory. *See id.*, Ex. A (Mejia Decl.), ¶ 19.

According to Plaintiffs, Defendant has utilized an "automatic telephone dialing system" ("ATDS") to impermissibly "promote its services" by sending unsolicited text messages to thousands of consumers. Compl. ¶¶ 2, 85. Plaintiffs explain that Defendant's ATDS platform allows it to send such messages from individualized telephone numbers that "deceiv[e] recipients into believing that the message was personalized." *Id.* ¶ 54. Moreover, Defendant allegedly employs "a combination of hardware and software systems" in its telemarketing scheme, which allows it to transmit copious automated text messages without human involvement. *Id.* ¶¶ 56–57. Importantly, Plaintiffs allege that Defendant sent such automated messages to individuals who did not consent to the messages, *see id.* ¶¶ 84, 90, and also to individuals with numbers on the national Do Not Call Registry, *see id.* ¶ 98.

Named plaintiffs Kim Kravitz and John Fiorentine allegedly received such unsolicited text messages from Defendant. Ms. Kravitz, a resident of Broward County, Florida, received two text messages from Defendant on or about July 30, 2019 and August 30, 2019, respectively. *Id.* ¶¶ 5, 39. Ms. Kravitz received these unsolicited text messages on her cellular phone, with a number

ending in 3388. *Id.* ¶ 44. Mr. Fiorentine, a resident of Washington, D.C., also received unsolicited text messages from Defendant. *Id.* ¶ 4. Specifically, Mr. Fiorentine alleges that between July 19 and October 1, 2019, he received several unsolicited text messages from Defendant on a phone number ending in 6362. *See id.* ¶ 24. Mr. Fiorentine alleges that he received these text messages while residing within the District of Columbia, *id.* ¶ 28, and after he had registered on the national Do Not Call Registry, *id.* ¶ 31. Collectively, Plaintiffs Kravitz and Fiorentine assert TCPA claims against Defendant on behalf of a putative class of individuals who have allegedly received unsolicited ATDS text messages from Defendant in the past four years. *Id.* ¶ 69. Additionally, Mr. Fiorentine asserts a specific TCPA claim on behalf of individuals receiving such messages while registered on the national Do Not Call Registry. *Id.* ¶ 70.

On February 27, 2020, Defendant responded to Plaintiffs' complaint by filing a "Motion for Transfer of Venue." *See generally* Def.'s Mot., ECF No. 11. Therein, Defendant "move[d] this Court for either a dismissal or transfer of venue for lack of jurisdiction . . . " Def.'s Mot. at 1. Throughout the motion, Defendant raised issues pertaining to personal jurisdiction, *see id.* at 2–5, but also focused predominantly on the argument that federal venue was proper in the District of Puerto Rico, *see id.* at 5–13. As one potential form of relief, Defendant requested that the Court transfer this action to the District of Puerto Rico, pursuant to 28 U.S.C. § 1404(a). *See* Def.'s Mot. at 5–13. In response, Plaintiffs argued that Defendant waived any personal jurisdiction defense by inadequately raising that objection in its opening motion. *See* Pls.' Opp'n at 2–4. Plaintiffs further asserted that venue was, in fact, proper in the District of Columbia and that a § 1404(a) transfer to the District of Puerto Rico would not serve the interests of justice. *See* Pls.' Opp'n at 4–10. In reply, Defendant argued against waiver and reaffirmed its position that personal jurisdiction is improper in this case because "there is no connection between [Defendant] and the District of

Columbia; nor any affiliation between the District of Columbia and the specific claims asserted by Plaintiffs." Def.'s Reply at 8. On August 7, 2020, by order of the Court, Plaintiffs submitted a supplemental brief further responding to the personal jurisdiction defense raised by Defendant. *See generally* Pls.' Suppl. Br., ECF No. 18.

Defendant's Motion is now ripe for this Court's review. Defendant's Motion presents a request for transfer under § 1404(a) and, for the reasons provided herein, the Court concludes that Defendant's Motion also presents a challenge to this Court's exercise of personal jurisdiction. *See* disc. *infra*, at Section III.A. Where "a district court has before it a straightforward personal jurisdiction issue" it may exercise its discretion and "turn[ ] directly" to that question. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999). The Court will do so here.

## II.     LEGAL STANDARD

When personal jurisdiction is challenged, the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990). At the pleading stage, the plaintiff "can satisfy that burden with a *prima facie* showing." *Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 424 (D.C. Cir. 1991)). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial;" but rather, the plaintiff may "rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as she can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani,* 417 F.3d at 7). The plaintiff, however, cannot rely on bare allegations or conclusory statements but "must allege specific acts connecting [the] defendant with the forum." *Second Amendment Found. v. United States Conf. of Mayors,* 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation marks omitted). "And unlike a motion to dismiss for failure to state a claim, the Court

need not confine itself to only the allegations in the complaint, but 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'" *Frost v. Catholic Univ. of Am.*, 960 F. Supp. 2d 226, 231 (D.D.C. 2013) (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

### III. DISCUSSION

For the reasons provided herein, the Court concludes that Defendant has sufficiently raised (and has not waived) an objection to this Court's jurisdiction. Moreover, the Court finds that Plaintiff has not established that personal jurisdiction over Defendant is proper in this case. For this reason, the Court **DISMISSES** Plaintiffs' complaint **WITHOUT PREJUDICE**.

#### A. Waiver

The defense of personal jurisdiction, as Plaintiffs correctly note, may be waived. *See* FED. R. CIV. P. 12(h)(1). The Federal Rules of Civil Procedure "provide that the defense of lack of personal jurisdiction . . . is waived by its omission from motions asserting defenses under Rule 12 or a responsive pleading." *Democratic Republic of Congo v. FG Hemisphere Assocs., LLC*, 508 F.3d 1062, 1064 (D.C. Cir. 2007). Here, Plaintiffs contend that Defendant effectuated such a waiver when "it d[id] not argue that venue is improper for lack of personal jurisdiction" in its opening brief. Pls.' Opp'n at 3. The Court, ultimately, disagrees.

As an initial matter, the Court acknowledges that Defendant's opening reference to personal jurisdiction was not a model of clarity. *See* Def.'s Mot. at 5–13 (citing 28 U.S.C. § 1391). Nonetheless, Defendant's motion does request this Court to order "either *a dismissal* or transfer of venue *for lack of jurisdiction*." Def.'s Mot. at 1 (emphasis added). Moreover, Defendant's motion raises "jurisdictional facts," *see id.* at 3, n.1, which demonstrate Defendant's lack of contact with the District of Columbia, *see id.* at 3–5. While this invocation of the personal jurisdiction defense was inartful, Defendant's motion did not wholly omit any jurisdictional reference or concede the

5

issue altogether.  *Cf. Malveaux v. Christian Bros. Servs.*, 753 F. Supp. 2d 35, 38–39 (D.D.C. 2010) (finding waiver where the defendant "implicitly concede[d] that this Court ha[d] personal jurisdiction").  Moreover, Defendant clarified its original personal jurisdiction argument for the Court and for Plaintiffs in its reply brief.  S*ee* Def.'s Reply at 2–9.

Accordingly, the Court is not prepared to find a waiver.  The D.C. Circuit has instructed that "[f]airness, not excessive technicality, is the guiding principle under . . . the Federal Rules of Civil Procedure."  *Gordon v. Nat'l Youth Work All.*, 675 F.2d 356, 360 (D.C. Cir. 1982).  As such, the Court will refrain from depriving Defendant of an "antecedent" issue, such as personal jurisdiction, on the basis of imprecise legal drafting in its opening motion.  *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) (quoting *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 101 (1998)).  Furthermore, the Court notes that in furtherance of these principles of fairness, it permitted Plaintiffs an additional opportunity to submit a supplemental brief addressing more fully the question of personal jurisdiction in this case.  *See* Min. Order, July 31, 2020.  For these reasons, the Court concludes that Defendant has sufficiently presented a personal jurisdiction defense and consideration of that issue is now proper.

### B.  Personal Jurisdiction

A court may possess either "general" or "specific" personal jurisdiction over a party.  *Bristol-Myers Squibb Co. v. Super. Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).  "General" jurisdiction, for a corporation like Defendant, arises in a jurisdiction "in which the corporation is fairly regarded as at home."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (emphasis in original). "Specific jurisdiction, [however,] is very different."  *Id.*  "In order for a state court to exercise specific jurisdiction, the suit must arise out

of or relate to the defendant's contacts with the forum." *Id.* (internal quotation marks omitted). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear Dunlop*, 564 U.S. at 919).

In this case, Plaintiffs make no argument that Defendant is "at home," for the purposes of general jurisdiction, in the District of Columbia. *See* Pls.' Suppl. Br. at 2–3 (addressing only specific jurisdiction).[2] Consequently, this Court will focus on the existence, or absence, of specific jurisdiction. "With respect to specific jurisdiction, the Court 'must engage in a two-part inquiry: first examine whether jurisdiction is applicable under the [D.C.] long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Trump v. Comm. on Ways & Means, United States House of Representatives*, 415 F. Supp. 3d 98, 105 (D.D.C. 2019) (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)). For the reasons set forth herein, the Court concludes that Plaintiffs have not satisfied their burden of establishing specific personal jurisdiction over Defendant within this framework.

### 1. Relevant Jurisdictional Facts

Because the evaluation of specific jurisdiction is a "fact intensive" inquiry "focusing on the "relationship among the defendant, the forum, and the litigation," the Court begins its analysis with an overview of the relevant facts. *Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157, 170 (D.D.C. 2017) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

---

[2] Plaintiffs offer a single, conclusory allegation that "Defendant conducts substantial business in the District of Columbia and has extensive, systematic and continuous contact within the District of Columbia." Compl. ¶ 9. For the reasons discussed herein, this conclusory allegation, which is contradicted by the record, would be insufficient to establish general jurisdiction over Defendant. *See* disc. *infra*, at Section III.B.3.

As noted, Defendant "is a Puerto Rico limited liability company" that "designs and sells ready-to-assemble furniture, kitchen appliances and home accessories, among other useful goods and occasionally home services."  Compl. ¶¶ 2, 6.  Since its inception in 2013, Defendant has operated in Puerto Rico through "three localities" within the territory and has limited its reach to the sale and delivery of merchandise exclusively within Puerto Rico.  *See* Def.'s Mot., Ex. A (Mejia Decl.), ¶¶ 9–10.  Defendant now operates as a franchisee under a 2018 Franchise Agreement with IKEA.  *See id.*, Ex. A (Mejia Decl.), ¶¶ 11–14.  According to Defendant, the Franchise Agreement continues to restrict Defendant's business operations exclusively to Puerto Rico.  *See id.*  Consequently, Defendant's customer base, staff, and business operations are entirely located within Puerto Rico, and, while purchases may be made electronically, Defendant must make all deliveries within Puerto Rico as well.  *See id.*, Ex. A (Mejia Decl.), ¶¶ 19–21.

Notwithstanding Defendant's Puerto Rican business operations, Plaintiffs allege a nexus with the District of Columbia by virtue of the text messages received by Plaintiff John Fiorentine.  *See* Compl. ¶¶ 24–28.  According to his affidavit, Mr. Fiorentine resided in Puerto Rico from 2004–2008, before he moved to Washington, D.C.  *See* Pls.' Opp'n, Ex. 1 (Fiorentine Decl.), ¶¶ 3–4.  Mr. Fiorentine then moved back to Puerto Rico in 2012, but ultimately returned to Washington, D.C. in 2016, where he continues to reside today.  *See id.*, Ex. 1 (Fiorentine Decl.), ¶¶ 5–7.  From 2008 to 2012 and from 2014 to present, Mr. Fiorentine has maintained a rental property in Puerto Rico.  *See id.*, Ex. 1 (Fiorentine Decl.), ¶ 8.  Defendant contends that any commercial relationship between Mr. Fiorentine and Defendant must have originated in Puerto Rico, *see* Def.'s Reply at 3, and provides evidence that all of Mr. Fiorentine's purchases from Defendant occurred physically within Puerto Rico between 2014 and 2018.  *See* Def.'s Mot., Ex. A (Mejia Decl.), ¶ 26.  In turn, Mr. Fiorentine has also stipulated that he initially transacted with

Defendant in Puerto Rico.  *See* Pls.' Opp'n, Ex. 1 (Fiorentine Decl.), ¶¶ 8–9.  Mr. Fiorentine alleges, however, that he was residing in Washington, D.C. when he allegedly received the telemarketing text messages from Defendant in 2019.  *See* Compl. ¶¶ 24–28.  Plaintiffs further assert that "[u]pon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district." *Id.* ¶ 28.

### 2. D.C. Long-Arm Statute

Upon consideration of these facts, the Court must first determine "whether jurisdiction is applicable under the [D.C.] long-arm statute." *Trump*, 415 F. Supp. 3d at 105.  "The D.C. long-arm statute authorizes specific jurisdiction 'over a person, who acts directly or by an agent, as to a claim for relief arising from' certain contacts that person may have with the forum." *Id.* (quoting D.C. Code § 13-423(a) (2019)).  Such contacts include:

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a)(1)–(4).  Here, Defendant concedes that its text messages to Mr. Fiorentine constitute "advertising" within the scope of subsection (a)(1) of the D.C. long-arm statute.  *See* Def.'s Reply at 6.  Accordingly, both parties have elected to "side-step" the D.C. long-arm statute altogether, relying on the D.C. Circuit's holding that jurisdiction under subsection (a)(1) is "coextensive . . . with the Constitution's due process limit." *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987); *see also* Pls.' Suppl. Br. at 2, n.1.

Notwithstanding Defendant's concession, the Court is not readily persuaded by the parties' statutory analysis.  Subsection (a)(1) applies where "the defendant has purposefully engaged in some type of commercial or business-related activity directed at District residents.'" *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 110 (D.D.C. 2018) (quoting *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001)).  Notably, the governing case law "does not precisely delineate the boundaries of commercial or business-related activity falling within the statute." *IMAPizza*, 334 F. Supp. 3d at 111.  And while the parties here have assumed that Defendant's "advertising" text messages fall within the scope of subsection (a)(1), their proffered authority does not reassure the Court of this legal conclusion.  For example, both parties rely on a generalized reference to *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 330–32 (D.C. 2000), to show that subsection (a)(1) covers "advertising."  *See* Def.'s Reply at 6; Pls.' Suppl. Br. at 2.  But the "advertising" at issue in *Shoppers* involved "extensive" weekly "advertisements in the District of Columbia market through the Washington Post . . . and other communications media." *Shoppers*, 746 A.2d at 330.  Such an advertising scheme is factually distinct from the select group of direct text messages at issue in this case, and, therefore, it is not clear that the analysis of subsection (a)(1) in *Shoppers* applies.

Moreover, neither party considers competing authority in this jurisdiction, which suggests that Defendant's text messages fall *outside* of subsection (a)(1).  The D.C. Circuit has noted, for example, "that subsection (a)(1)'s 'transacting business' requirement could not be satisfied by telephone or fax contacts alone." *FC Inv. Group LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1095 n.8 (D.C. Cir. 2008).  And this Court has concluded "that email and telephone communications sent into the District of Columbia are not sufficient to constitute business transactions in themselves, even if they are made pursuant to an underlying contract between a resident [ ] and a nonresident

Defendant." *Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 165 (D.D.C. 2014); *see also Kopff v. Battaglia*, 425 F. Supp. 2d 76, 82 (D.D.C. 2006).  Such holdings call into question the parties' collective position regarding the applicability of subsection (a)(1) in this case.

This is not a distinction without a difference.  To the contrary, the difference between subsections (a)(1) and (a)(4) has a tangible effect, as jurisdiction under subsection (a)(4) requires an additional demonstration of certain "plus factors" deemed *more* restrictive than the constitutional floor.  *See Crane*, 814 F.2d at 762; *Koppf*, 425 F. Supp. 2d at 82.  Although the parties have not specifically briefed the issue of jurisdiction under subsection (a)(4), had they done so, the Court would have likely found such statutory jurisdiction lacking.  Nonetheless, the Court will defer to the mutual stipulation by the parties in this case that Defendant's conduct falls within subsection (a)(1) of the D.C. long-arm statute and proceed accordingly.  *See* Pls.' Suppl. Br. at 2, n.1; *see also* Order, ECF No. 4, ¶ 10.  Because Plaintiffs have failed to satisfy the constitutional threshold for specific jurisdiction in this case, the application of subsection (a)(1), as opposed to subsection (a)(4), does not ultimately affect the outcome of this Court's resolution of the pending motion.  *See* disc. *infra*, at Section III.B.3.

### 3. Constitutional Due Process

Even where the exercise of personal jurisdiction satisfies the D.C. long-arm statute, it is only proper where a court finds that such jurisdiction also "satisfies the constitutional requirements of due process." *Trump*, 415 F. Supp. 3d at 105.  To satisfy this burden, "a plaintiff must show 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media*, 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  "If the plaintiff relies on a theory of specific jurisdiction, this minimum contacts analysis focuses on the

relationship among the defendant, the forum, and the litigation." *IMAPizza*, 334 F. Supp. 3d at 113 (quotation omitted). Of note, this analysis "looks to the defendant's contacts with the forum State itself, not [simply] the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Plaintiffs have not alleged sufficient facts to plausibly demonstrate Defendant's "minimum contacts" with the District of Columbia. As an initial matter, Plaintiffs allege that "Defendant conducts substantial business in the District of Columbia and has extensive, systematic and continuous contact within the District of Columbia." Compl. ¶ 9. But Plaintiffs allege no specific facts to support this conclusory assertion, and, therefore, the Court is not required to accept it as true. *See Frost*, 960 F. Supp. 2d at 231. Moreover, Defendant has presented credible, competing evidence that it operates entirely within Puerto Rico and maintains no physical presence in the District of Columbia whatsoever. *See* Def.'s Mot., Ex. A (Mejia Decl.), ¶¶ 4–25. Indeed, Defendant explains that its current Franchise Agreement with IKEA expressly restricts the company to business operations within Puerto Rico itself. *See id.*, Ex. A (Mejia Decl.), ¶¶ 11–14. These facts, which Plaintiffs do not address directly in their briefing, flatly contradict Plaintiffs' general jurisdictional assertions regarding Defendant's presence in the District of Columbia.

Instead, Plaintiffs rely on the text messages Defendant allegedly sent to Mr. Fiorentine while he was residing in Washington, D.C., as well as potential text messages Defendant may have sent to other yet-unknown D.C. residents. *See* Compl. ¶¶ 24–28; *see also* Pls.' Suppl. Br. at 2–3. But this jurisdictional theory suffers from a fundamental defect: Plaintiffs have not alleged any facts supporting the inference that Defendant's text messages were intentionally directed at the District of Columbia itself. *See Walden*, 571 U.S. at 285. For example, there is no indication that Defendant initiated a relationship with Mr. Fiorentine, or any other individual, while they resided

12

in Washington, D.C. and subsequently sent them solicitations within this jurisdiction. To the contrary, Defendant asserts that Mr. Fiorentine's relationship with Defendant could only have originated in Puerto Rico, *see* Def.'s Reply at 3, and Plaintiffs do not refute this position. In fact, Mr. Fiorentine states expressly that he presently maintains a rental property in Puerto Rico and "purchased goods from IKEA Puerto Rico to furnish [his] rental apartment there." Pl.'s Opp'n, Ex. 1 (Fiorentine Decl.), ¶¶ 8–9. Accordingly, Defendant's forum contacts arose from a Puerto Rican relationship, which only touched the District of Columbia by virtue of Mr. Fiorentine's unilateral decision to move to this jurisdiction *after* the relationship with Defendant was formed. Moreover, Plaintiffs do not allege that Defendant had any awareness of Mr. Fiorentine's relocation to the District of Columbia. For example, the complaint does not even allege that Mr. Fiorentine's "6362" telephone number had a Washington, D.C. area code alerting Defendant to Mr. Fiorentine's new place of residence within this judicial district. *See* Compl. ¶ 24.

In this context, Plaintiffs have not demonstrated any "intentional conduct by the defendant" that would create the contact with the District of Columbia needed to support an exercise of personal jurisdiction. *Walden*, 571 U.S. at 286. Plaintiffs' jurisdictional theory relies entirely on Mr. Fiorentine's unilateral decision to "bring" the text messages at issue into this district. Substantiating an exercise of personal jurisdiction on such an unpredictable connection with the District of Columbia is far too attenuated to satisfy the "notions of fair play and substantial justice" underwriting constitutional due process. *GTE New Media*, 199 F.3d at 1347. For example, if Mr. Fiorentine had received Defendant's messages while traveling through Virginia, then the only in-forum conduct in this case would disappear and the Virginia courts would become involved. *See* Compl. ¶ 28. This type of uncertainty is precisely why the Supreme Court has consistently rejected the exercise of personal jurisdiction over a defendant on the basis of unilateral conduct by the

plaintiff. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"); *Walden*, 571 U.S. at 289 (rejecting an "approach to the 'minimum contacts' analysis [that] impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis"). This case is no different, and, accordingly, Plaintiffs' theory of personal jurisdiction falls short. *See Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1192 (D.C. Cir. 2013) (finding that "at least ten emails" sent by a non-resident defendant to a law firm in the District of Columbia retained by the defendant did not establish a basis for personal jurisdiction).

Finally, the Court notes that Plaintiffs do not offer any binding precedent to undercut the Court's conclusion. *See* Pls.' Suppl. Br. at 2–3. In fact, Plaintiffs' authority presents factual distinctions which underscore the lack of forum contacts in this case. In *Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1 (D.D.C. 1996), for example, jurisdiction in this district was proper where the defendant knowingly placed an advertisement in the Washington Post targeting the Washington, D.C. market. 958 F. Supp. at 3. And, as noted above, the same is true of the defendant in *Shoppers*, who regularly placed advertisements in the Washington Post and other local media outlets to solicit business. *Shoppers*, 746 A.2d at 330. The decisions of these defendants to direct their advertisements towards Washington, D.C., through advertising outlets based in the district, is noticeably absent from Plaintiffs' jurisdictional theory here. Lastly, this case is also distinguishable from *Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. CIV.A. 01-0004360, 2003 WL 21384825 (D.C. Super. Ct. Apr. 17, 2003), upon which Plaintiffs rely. *See* Pls.' Suppl. Br. at 2–3. There, the defendants sent 1,634 faxes to the Washington, D.C. office of

14

Covington & Burling, even after a partner from that office sent a letter requesting that the faxes cease. *See Covington & Burling*, 2003 WL 21384825 at *1, 6. These faxes, which specifically targeted a Washington, D.C. locale, are distinguishable from Defendant's text messages to Mr. Fiorentine, which were not directed towards a Washington, D.C. residence or office, but rather to a personal cell-phone number obtained through a transaction in Puerto Rico. *See* Pls.' Opp'n, Ex. 1 (Fiorentine Decl.), ¶¶ 8–9; Def.'s Reply at 3. As such, the Court is unpersuaded by Plaintiffs' proffered authority.

For the reasons stated above, Plaintiffs have not plausibly demonstrated that Defendant has the requisite contact with the District of Columbia to justify the Court's exercise of specific personal jurisdiction in this case. Accordingly, Plaintiffs have not satisfied their jurisdictional burden and the Court must, therefore, dismiss this case. *See Frost*, 960 F. Supp. 2d at 232.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion, ECF No. 11. Accordingly, and for the reasons provided above, the Court hereby **DISMISSES WITHOUT PREJUDICE** Plaintiffs' complaint in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date: August 29, 2020

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge